UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**UNITED STATES OF AMERICA,**

    v.                                                        Criminal No. 2:11cr156

**AARON W. VICK**

and

**MARIA A. BUDANOVA,**

        **Defendants.**

## MEMORANDUM OPINION

This matter comes before the court on the defendants' Motions to Dismiss Indictment or to Suppress All Evidence for Violations of the Posse Comitatus Act and 10 U.S.C. § 375.[1] The motions have been fully briefed and are ripe for decision. A hearing was held on December 15, 2011, during which the court heard testimony from Naval Criminal Investigative Service ("NCIS")[2] Assistant Legal Counsel Peter McLaughlin, Department of Homeland Security (DHS) Special Agent Adriana Mirarchi, and NCIS Special Agent Rodney Budd. For the reasons set forth herein, the defendants' motions are **DENIED**.

---

[1] See infra note 3 for the text of the statutes allegedly violated by the United States, or its agents.

[2] NCIS is a federal law enforcement agency staffed with civilian special agents who have primary responsibility for investigating major criminal offenses impacting the Department of the Navy.

## I. Background

On September 9, 2009, during the course of a joint investigation by DHS and NCIS, a federal arrest warrant was executed on a Russian national woman who was wanted for marriage fraud. Gov't's Consol. Resp. at 1. During this arrest, agents came into contact with defendant Budanova, also a Russian national woman without legal status in the United States. Id. at 1-2. Pursuant to testimony at the December 15, 2011, hearing, DHS Special Agent Mirarchi determined that Budanova was not a United States citizen and was not legally present in the United States. The agents specifically learned that Budanova entered the United States on a J-1 student visa but failed to exit when that visa expired on August 31, 2008. Id. at 2. The agents then administratively arrested Budanova for her illegal presence in the country, and DHS began removal proceedings. Id.

In December 2010, Budanova petitioned the United States Customs and Immigration Service ("USCIS") for legal status. Id. This petition was accompanied by documents submitted by Budanova's husband, an enlisted Navy sailor named "C.P." Id. Upon receipt of the petition, USCIS notified DHS Special Agent Mirarchi, who discussed the case with other DHS and NCIS agents. Id. Suspicious that Budanova might be engaging in a sham marriage, DHS and NCIS launched a joint investigation, predominantly carried out by NCIS personnel. Id. at 2-3. The

investigation revealed no information indicating that Budanova's current marriage to "C.P." was fraudulent, but it did reveal an alleged previous sham marriage to a civilian, defendant Vick, which is said to have lasted from April 15, 2009 until September 14, 2010. Id. at 3. Defendant Vick was interviewed by NCIS agents and admitted to marrying Budanova so that she could obtain legal status in exchange for $1,500. Id.

As a result of this investigation, defendants were indicted by a federal grand jury on September 21, 2011. Id. Accused of entering into a sham marriage, both defendants are charged with conspiracy to commit marriage fraud, in violation of 18 U.S.C. § 371, and marriage fraud, in violation of 8 U.S.C. § 1325(c). In addition, defendant Budanova is charged with violating 18 U.S.C. § 1015(a), for making false statements related to naturalization and citizenship. This latter charge relates to a statement Budanova made in her petition to USCIS in which she states, allegedly falsely, that she had never committed a crime of moral turpitude for which she had not been arrested.

## II. Analysis

Both defendants are civilians. They allege that, due to their civilian status, NCIS had no authority to investigate them and, therefore, during the course of their involvement with this case, NCIS violated the Posse Comitatus Act, 18 U.S.C. § 1385

("PCA"), and 10 U.S.C. § 375[3]. On the grounds of such a violation, both defendants move to dismiss the indictment or, alternatively, to suppress all evidence.

The purpose of the PCA "is to uphold the American tradition of restricting military intrusions into civilian affairs, except where Congress has recognized a special need for military assistance in law enforcement." United States v. Al-Talib, 55 F.3d 923, 929 (4th Cir. 1995) (citation omitted). The PCA prohibits using "the Army or the Air Force" to execute the laws of the United States, 18 U.S.C. § 1385, and has since been construed, together with 10 U.S.C. § 375, to extend to all active duty members of the armed services. See United States v. Kahn, 35 F.3d 426, 431 (9th Cir. 1994).

Here, the court need not decide whether the use of NCIS agents in the investigation of this case violated the PCA and 10

---

[3] Title 18 U.S.C. § 1385 states:
   Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined under this title or imprisoned not more than two years, or both.

Title 10 U.S.C. § 375 states, in relevant part:
   The Secretary of Defense shall prescribe such regulations as may be necessary to ensure that any activity . . . under this chapter does not include or permit direct participation by a member of the Army, Navy, Air Force, or Marine Corps in a search, seizure, arrest, or other similar activity unless participation in such activity by such member is otherwise authorized by law.

U.S.C. § 375, because the relief sought by defendants — dismissal of the indictment and application of the exclusionary rule — are inappropriate remedies. First, there is no authority to support a motion to dismiss an indictment for a violation of the PCA. Defendants have not provided any such authority, and there is nothing on the face of the statute to support the position that a violation warrants dismissal of an indictment.

Furthermore, the application of the exclusionary rule is unwarranted. Under the PCA, the exclusive remedies for a violation are a fine, a maximum of two years imprisonment, or both, not suppression of evidence. 18 U.S.C. § 1385. The United States Court of Appeals for the Fourth Circuit has repeatedly declined to impose the exclusionary rule upon a violation of the PCA. See, e.g., Al-Talib, 55 F.3d at 930 ("as a general matter, the exclusionary rule is not a remedy for violations of the PCA"); United States v. Walden, 490 F.2d 372, 376-77 (4th Cir. 1974)[4]. In fact, not a single federal court

---

[4] In Walden, the Fourth Circuit noted, "[s]hould there be evidence of widespread or repeated violations in any future case, or ineffectiveness of enforcement by the military, we will consider ourselves free to consider whether adoption of an exclusionary rule is required as a future deterrent." 490 F.2d at 377. In the present case, there is no allegation or indication of widespread or repetitive violations that require application of the exclusionary rule to deter future violations. See infra note 5.

thus far has extended the exclusionary rule to apply to PCA violations. See, e.g., United States v. Hayes, 921 F.2d 100, 104 (7th Cir. 1990); United States v. Roberts, 779 F.2d 565, 568 (9th Cir. 1986); United States v. Wolffs, 594 F.2d 77, 85 (5th Cir. 1979); United States v. Pangelinan, 2010 U.S. Dist. LEXIS 127297, at *8 (D. Guam Dec. 1, 2010). The circumstances of this case are not so extraordinary as to compel the court to depart from the line of cases cited above.[5]

Accordingly, the court hereby **DENIES** the defendants' motions to dismiss the indictment and to suppress all evidence. The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion to the Special Assistant United States Attorney and to defense counsel.

It is so **ORDERED**.

/s/
Rebecca Beach Smith
Chief
United States District Judge

Rebecca Beach Smith
Chief United States District Judge

Norfolk, Virginia

January 27, 2012

---

[5] At best, the wrong agent interviewed the wrong person in the course of a joint investigation by NCIS and DHS. This reason, in and of itself, is not sufficient to depart from settled law; simply put, this is not the right case on its facts in which to do so.